IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MICAH HEATH LANSING,

                 Plaintiff,

     v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

No. 3:16-cv-01627-HZ

OPINION & ORDER


Katherine L. Eitenmiller
Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

       Attorneys for Plaintiff


Janice E. Herbert
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Sarah L. Martin
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Micah Lansing brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on March 27, 2014, and SSI on February 9, 2015, alleging disability as of October 2, 2006. Tr. 90, 239.[1] His applications were denied initially and on reconsideration. Tr. 140–44, 148–50. On June 11, 2016, Plaintiff appeared, without counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 35. On March 8, 2016, the ALJ found Plaintiff not disabled. Tr. 26. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on major depression, intervertebral disc syndrome, synovitis, hypertensive vascular disease, tinnitus, limited extension of the knees, hiatal hernia, flat foot condition, and migraines. Tr. 285. He was 41 at the time of the administrative hearing. Tr. 40. Plaintiff has a high school education and past relevant work experience as a field artillery crewmember. Tr. 286, 24.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date of October 2, 2006. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "depression; post-traumatic stress disorder (PTSD)/anxiety; obesity; degenerative disc disease and a history of various sprains and strains." *Id*. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] is further limited to no more than occasional stooping, kneeling, crouching, and crawling. He must avoid climbing ropes, ladders, or scaffolds. He can occasionally reach, handle, grasp, or finger with the right upper extremity. He must avoid concentrated exposure to extreme temperatures, as well as exposure to unprotected heights, moving machinery, or similar workplace hazards. He is limited to no more than simple, repetitive, routine tasks requiring no more than occasional brief superficial interaction with the general public.

Tr. 21. Because of these limitations the ALJ concluded that Plaintiff could not perform his past relevant work as a field artillery crewmember. Tr. 24. But at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "bakery conveyor line worker," "dealer, account clerk," and "laminating-machine off-bearer." Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 26.

*///*

*///*

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

**DISCUSSION**

Plaintiff contends that the ALJ erred by (1) failing to account for all of Plaintiff's social limitations in the ALJ's RFC determination and his hypothetical to the Vocational Expert (VE); (2) proceeding with the hearing without obtaining a voluntary waiver of representation from Plaintiff; (3) failing to meet his heightened duty to probe into the record and explore all relevant facts at the hearing; (4) failing to consider the medical source opinions of Mary Jenkins Gunn,

MSW, LCSW, Charles Sprague, MD, and Victor Richenstein, MD; (5) failing to provide

sufficient reasons for assigning less weight to the VA disability decision; and (6) failing to

provide clear and convincing reasons for discounting Plaintiff's symptom testimony. Pl.'s

Opening Br. 5, ECF 15. Plaintiff's arguments are unavailing and, thus, the Court affirms the

ALJ's decision.

## I.    RFC Assessment & VE Hypothetical

Plaintiff first alleges that the ALJ erred at step five because his RFC and hypothetical to

the VE failed to take into account all of Plaintiff's social limitations proposed by a state agency

psychological consultant. The RFC is the most a person can do, despite his physical or mental

limitations. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all

medically determinable impairments, including those that are not "severe," and evaluate "all of

the relevant medical and other evidence, including the claimant's testimony." *Id.*; SSR 96-8p.

An ALJ may rely on the testimony of a VE to determine whether a claimant retains the ability to

perform past relevant work or other work in the national or regional economy at step five. *See*

*Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only

those limitations which are supported by substantial evidence in the RFC and hypotheticals

posed to a VE. *See id.* at 1163–65. "Conversely, an ALJ is not free to disregard properly

supported limitations," including improperly discredited symptom testimony provided by the

claimant or lay witness. *Robbins,* 466 F.3d at 886. If the assumptions presented in the

hypothetical are not supported by substantial evidence in the record, "the vocational expert's

opinion has no evidentiary value." *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).

The ALJ gave full weight to the January 2015 assessment of state agency psychological

consultant Megan Nicoloff, Psy.D. Tr. 23. Dr. Nicoloff found that "the claimant's depression and

anxiety would reasonably restrict him to 'simple routine tasks' that avoided extensive interaction with the general public." Tr. 23, 109, 134. The RFC and the hypothetical posed to the VE both accounted for "no more than occasional brief superficial interaction with the general public." Tr. 21, 59.

Plaintiff argues the ALJ failed to include limitations on supervisor and coworker interaction proposed by Dr. Nicoloff in his RFC and hypothetical. Pl. Opening Br. 6. The Commissioner responds, and this Court agrees, that such limitations were not present in Dr. Nicoloff's opinion. Def. Resp. Br. 4. In her assessment, Dr. Nicoloff indicated that he was "not significantly limited" in his ability to interact with supervisors or coworkers. Tr. 109, 134. Rather, she found that Plaintiff is "*limited to* interactions with coworkers and supervisors and should not be required to interact extensively with the general public." *Id.* (emphasis added). The ALJ took these limitations into account by limiting Plaintiff's interactions with the general public. Tr. 21. Moreover, even if Plaintiff's interpretation was a reasonable one, this Court will not substitute its own judgment for that of the ALJ when his interpretation is supported by a rational reading of the record. *See Batson,* 359 F.3d at 1193. Accordingly, the ALJ has not erred in formulating the RFC or hypothetical posed to the VE.

## II.     Plaintiff's Right to Representation

Plaintiff argues that the ALJ erred in proceeding with the hearing without obtaining a voluntary waiver of representation from Plaintiff. Pl. Opening Br. 7–8. In Social Security cases, claimants have a statutory right to notification regarding representation. 42 U.S.C. § 406(c); *Roberts v. Comm'r Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011).  According to the Hearings, Appeals, and Litigation Manuel ("HALLEX"), the ALJ should afford an unrepresented claimant one postponement to obtain representation. HALLEX I-2-6-52. HALLEX also provides

various procedures for the ALJ to follow in such cases, such as obtaining an "Acknowledgement of Postponement in Order to Obtain Representation" from the claimant. *Id.*; HALLEX 1-2-5-97. If the claimant proceeds with a hearing without representation, the ALJ must "ensure on the record that the claimant has been properly advised of the right to representation and that the claimant is capable of making an informed choice about representation." HALLEX 1-2-6-52. He must also "obtain a written waiver of the right to representation." *Id.* HALLEX , however, does not carry the force of law. *Roberts*, 644 F.3d at 933. In this circuit, so long as the ALJ complies with the notification requirements under § 406(c), the ALJ has met his burden with regard to Plaintiff's right to representation. *Id.* at 934.

Plaintiff asserts that he did not voluntarily waive counsel, he requested a postponement to obtain counsel, and the ALJ denied this request. Pl. Opening Br. 7. Plaintiff's assertions, however, misstate the record. The Plaintiff appeared in front of the ALJ three times. The first time, Plaintiff appeared with an attorney who requested a continuance to obtain additional evidence. Tr. 74–79. The second time, Plaintiff appeared without counsel and requested a postponement to obtain a representative. Tr. 70. The ALJ granted his request, informed Plaintiff of his right to obtain representation, and told Plaintiff that further postponements would not be granted. Tr. 69–70. At the third hearing, the Plaintiff appeared again without a representative. Tr. 36. Plaintiff requested a second postponement at that hearing, and the ALJ denied it because he had already granted Plaintiff one postponement and Plaintiff had delayed in attempting to obtain an attorney. Tr. 37. At the hearing, Plaintiff also acknowledged he knew he would only receive one postponement. *Id.* He accordingly signed a waiver of representation. Tr. 231.

Here, the ALJ complied both with the statutory requirement and HALLEX. He informed Plaintiff of his right to representation and granted him a postponement at the first hearing in

accordance with § 406(c) and HALLEX. The ALJ also ensured that Plaintiff knowingly waived his right to representation pursuant to HALLEX. Accordingly, the ALJ did not err in proceeding with the hearing.

### III.     The ALJ's Duty to Develop the Record

Plaintiff alleges the ALJ failed to fully develop the record as it pertains to his physical limitations. In Social Security cases, "the ALJ has 'a special duty to fully and fairly develop the record and assure that the claimant's interests are considered.'" *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). "This is particularly true where, as here, the claimant is not represented by counsel." *Id.* The Ninth Circuit has found that asking a "single, open ended question" may be inadequate to fully and fairly develop the record with regard to a claimant's functional limitations. *Id.* at 1069; *see also Roe v. Comm'r Soc Sec.*, 599 Fed.Appx. 651, 651 (9th Cir. 2015) (finding the ALJ erred in only asking open-ended question as to a claimant's disabling impairments where the record contained diagnoses of his conditions but no detail as to his functional limitations). Generally, however, the duty to develop the record is only triggered where "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

Here, the ALJ's questioning of the Plaintiff at the hearing did not result in error. Though the ALJ did not inquire specifically into Plaintiff's physical limitations, the record contains a great deal of information on how Plaintiff's conditions translate into functional limitations. In the record, Plaintiff discussed his physical limitations with his providers. Tr. 334 (noting problems with standing and sitting), 1252 (describing physical limitations related to knee pain), 1345 (noting that his pain limits his daily activities). The VA medical records also extensively

document his back pain and associated limitations. Tr. 791–837 (physical evaluation for VA disability benefits), 803 (finding Plaintiff's back problems "do not limit him for light and sedentary occupations"), 930 (observations from a physical exam to assess his back pain). In formulating his RFC, The ALJ relied heavily on the state agency consultants' summary of the medical record and objective medical evidence documenting his physical limitations. Tr. 24. Thus, while the ALJ may have failed to ask about specific functional limitations related to Plaintiff's physical conditions at the hearing, he did not err because the record was unambiguous and adequate to allow him to properly evaluate the evidence.

## IV.    Medical Source Opinions

Plaintiff contends that the ALJ erred by improperly discrediting the opinions of Mary Jenkins Gunn, MSW, LCSW; Charles Sprague, MD; and Victor Richenstein, MD. Pl. Opening Br. 9. Opinions regarding the ultimate issue of disability are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark*, 454 F.3d at 1067. Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007); *Widmark*, 454 F.3d at 1066. However, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 426 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ errs when he rejects a medical opinion by ignoring it. *Garrison v. Colvin,* 759 F.3d 995, 1012–13 (9th Cir. 2014). "The Secretary, however, need not discuss all evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)). Further, the harmless error analysis applies to the improper rejection of the opinion of a treating source. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). In Social Security cases, errors are "harmless when they 'are inconsequential to the ultimately nondisability determination'" such that "'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Id.* (quoting *Stout v. Comm'r Soc. Sec Admin.*, 454 F.2d 1050, 1055–56 (9th Cir. 2006)).

### a. Opinion of Ms. Jenkins Gunn and Dr. Sprague

Ms. Jenkins Gunn is one of Plaintiff's treating mental health providers. Ms. Jenkins Gunn provided a letter to the VA on October 5, 2006, regarding Plaintiff's mental health conditions. Tr. 1390. The letter was also signed by Dr. Charles Sprague, a clinical psychiatrist. *Id.* The letter's purpose was to supplement an earlier Compensation and Pension ("C&P") exam that took place soon after Plaintiff's discharge from the military when his mental health symptoms were less severe. *Id.*

In the letter, Ms. Jenkins Gunn noted that Plaintiff's combat-related stress symptoms had worsened since his C&P exam a few months earlier. *Id.* She noted he had increased "anxiety, depression, sleep disturbance, night sweats, social isolation, anger and irritability, marital problems, feelings of suppressed rage, and hypervigilance." *Id.* She also noted that he had been prescribed two psychotropic medications for his anxiety and sleep issues. *Id.* She also found that his symptoms, particularly his anxiety and stress, were further exacerbated because of an

accident at his workplace on Plaintiff's alleged onset date, October 2, 2006. *Id.* At that time, Plaintiff had a one-week release from work and was hoping to attend college through the VA's vocational rehabilitation. *Id.*

The ALJ never referenced or considered this letter in his opinion, and Plaintiff asserts that he has erred in doing so. Plaintiff may be correct that the ALJ's failure to consider this opinion is error. However, any error was harmless as crediting the opinion would not have changed the ultimate nondisability determination. In his decision, the ALJ took into account Plaintiff's limitations in social functioning and concentration. Tr. 25. In formulating his RFC, the ALJ limited Plaintiff to "simple, repetitive, routine tasks requiring no more than brief superficial interaction with the general public." Tr. 21. As the Commissioner points out, Ms. Gunn and Dr. Sprague's opinion—which contains evidence of an increase in his symptoms because of the work-related accident and a one-week work release—"does not support greater restrictions than the ALJ's found." Def. Resp. Br. 7 (citing *Turner v. Comm'r Soc. Sec.Admin.,* 613 F.3d 1217, 1222–24 (9th Cir. 2010)). Their letter also does not present any opinion as to Plaintiff's functional limitations nor does it support a finding of total disability. *See Vincent*, 739 F.2d at 1394–95 (holding the ALJ need only explain why significant or probative evidence has been rejected). Accordingly, the ALJ's failure to address this opinion was harmless.

### b. Opinion of Dr. Richenstein

In December of 2006, Dr. Richenstein provided a psychiatric evaluation of Plaintiff at the request of his insurance company regarding the October 2006 workplace accident that exacerbated Plaintiff's mental health symptoms. Tr. 1395. The accident occurred at the bakery where Plaintiff was employed. *Id.* His coworker became trapped in bakery machinery and stopped breathing. *Id.* Plaintiff helped successfully rescue the coworker, but the incident severely impacted his sense of safety in his workplace and increased his anxiety. *Id.* This incident was

complicated by Plaintiff's tour of duty in Iraq, where he "drove a Humvee and was in the central gunner position." *Id.*

In that consultation, Dr. Richenstein diagnosed Plaintiff with post-traumatic stress disorder related to this accident and complicated by his time in the military. Tr. 1398. Plaintiff's symptoms included difficulty sleeping, anxiety, and angry outbursts. Tr. 1395. He reported "uncharacteristically . . . threat[ening] to punch his six-year-old daughter in a store." *Id.* In addition to hyperarousal, he reported oscillating between feeling numb and detached and feeling too emotional and angry. Tr. 1396. He also noted passive suicidal ideation and self-abuse. *Id.*

In a May 10, 2007, letter regarding his workplace accident, Dr. Richenstein opined that Plaintiff's accident was a major contributing factor to his PTSD. Tr. 1399. He opined that he "cannot return to the bakery environment" because there were too many triggers relating to his accident despite therapy and medication. Tr. 1400.  He noted that he was "unable to return to the work environment because of disabling triggered anxiety" but "outside of [the] work environment, he is adapting to school and home stressors with ongoing therapy. . . ." Tr. 1399. He stated that "the hope is that all symptoms will improve and that he is able to advance in another vocation." Tr. 1400.

Like the opinion of Ms. Gunn and Dr. Sprague, any error the ALJ committed in failing to mention Dr. Richenstein's opinion was harmless. Here, too, Dr. Richenstein's opinion—noting increased anxiety and difficulty in social functioning directly related to his accident—does not include any limitations greater than those provided for by the ALJ, which limited Plaintiff to brief superficial interaction with the general public and simple, routine, and repetitive work. Tr. 21. Plaintiff is correct in noting that Dr. Richenstein found that he could not return to the bakery environment. Tr. 1400. And though the ALJ did include a bakery job in his step five

determination—in contradiction to the ALJ's own statements at the hearing that he would not do so—the VE found two additional jobs outside of the bakery setting that Plaintiff could perform. Tr. 25, 61–62. The ALJ, therefore, did not commit a harmful error by failing to discuss Dr. Richenstein's 2006 and 2007 opinions.

## V. VA Disability Rating

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting his VA disability rating and decision. Pl. Opening Br. 10–12. "[A]n ALJ must ordinarily give great weight to a VA determination of disability" because there is a "marked similarity between these two federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *accord McLeod v. Astrue*, 640 F.3d 8812, 888 (9th Cir. 2011). However, because "VA and SSA criteria for determining disability are not identical . . . the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

On October 9, 2012, the VA rated Plaintiff 100% disabled due to his major depressive disorder. Tr. 278. The VA found his condition caused:

- Total occupational and social impairment
- Intermittent inability to perform activities of daily living
- Impaired impulse control
- Inability to establish and maintain effective relationships
- Near-continuous depression affecting the ability to function independently, appropriately and effectively
- Near-continuous panic affecting the ability to function independently, appropriately and effectively
- The examiner's assessment of [his] mental functioning, which is partially reflected in [his] Global Assessment of Function score . . .
- Difficulty establishing and maintaining effective work and social relationships
- Difficulty in understanding complex commands
- Disturbances of motivation and mood
- Flattened affect
- Impaired judgment
- Anxiety

- Chronic sleep impairment
- Depressed mood
- Suspiciousness

*Id.* The examiner assigned Plaintiff a Global Assessment of Function of 42, "indicating serious symptoms; or any serious impairment in social, occupational, or school functioning." *Id.*

The ALJ first discounts the VA opinion because it is "predicated on a more deferential standard used by the VA for evaluating subjective complaints." Tr. 24. Specifically, he emphasizes that the Social Security Administration "uses a more 'rigorous' standard wherein the subjective complaints must be reasonably consistent with the objective medical findings." *Id.* While the Commissioner is correct to point out that the ALJ need not rely on medical evidence that is "based in large part upon claimant's self-reports," this misstates the ALJ's opinion. Def. Resp. Br. 10 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). Rather than citing to his own credibility findings elsewhere in the opinion, the ALJ merely states that "[t]he undersigned concludes that VA rating decision relied uncritically on the claimant's subjective complaints, which are not fully consistent with more recent medical evidence." Tr. 24. And, perhaps most critically, the ALJ misstates the law. While it may be one of many factors in discounting a claimant's credibility, an ALJ cannot discount a claimant's subjective complaints solely because they are inconsistent with the medical record. *See Reddick,* 157 F.3d at 722. Accordingly, this is not a persuasive or valid reason for discounting the VA decision.

But the ALJ also discounts the VA decision because the VA did not have the opportunity to review more recent medical records, which the ALJ found "suggest improvement in [Plaintiff's] overall mental functioning." Tr. 23. The ALJ cites a PTSD screening from 2014 in support of this point. *Id*. That report indicated that he was not having nightmares, was not on guard, and did not feel numb or detached from others. Tr. 1294. The ALJ also cites to the July

2015 consultative examination by Paula Belcher, Ph.D. Dr. Belcher indicated that Plaintiff's reported symptoms for PTSD "do not fully meet the criteria for a diagnosis of that disorder." Tr. 1385. Dr. Belcher also emphasized that Plaintiff was not seeking psychotherapy at the VA despite his symptoms of PTSD and depression. *Id.* Such reasoning constitutes a valid and specific reason to discount a VA disability determination. *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010) (The ALJ properly disregarded the VA's determination as to the claimant's sleep apnea where more recent records suggested that his condition "had improved since the VA's disability determination."); *Valentine*, 574 F.2d at 695 ("The ALJ was justified in rejecting the VA's disability rating on the basis that she had evidence the VA did not," including opinions of state agency psychologists, work history, VE input, and other activities.). Accordingly, the ALJ did not err in discounting the VA's decision as to the disabling effects of Plaintiff's mental health conditions.

## VI. Credibility Determination

Plaintiff alleges the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's credibility. In assessing a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti,* 533 F.3d at 1039. At the second stage of this analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan,* 169 F.3d at 599.

Plaintiff has had severe impairments of PTSD/anxiety and Major Depression. Tr. 18. Plaintiff testified that his mental health conditions cause "confusion" and "paralysis" where he freezes up and is unable to act. Tr. 49. Plaintiff testified that he is slow in his thought processing and his decision making. Tr. 50. He also stated that he has a hard time with relationships because of his depression. *Id.*

Plaintiff said he spends most of the day at home. *Id.* He spends most of his time sitting in his shop "tinker[ing]" and "throw[ing] junk together." Tr. 51. He also reads and plays games online. Tr. 55.Plaintiff is able to drive and will take trips to the store when necessary. Tr. 51.  He

testified he is no longer able to watch TV or movies, woodwork, or do chemistry. Tr. 52.

Plaintiff said he occasionally spends time with his daughters and completes different household

projects with his partner. Tr. 52–55.  Outside of his family, he does not spend much time

socializing with anyone. Tr. 55.

The ALJ provides four reasons for discounting Plaintiff's credibility as to the severity of

his symptoms: (1) the medical record does not provide a medical justification for his reclusive

lifestyle; (2) inconsistencies with Plaintiff's reported activities of daily living; (3) Plaintiff's

inability to follow a prescribed course of treatment; and (4) Plaintiff's brief work as a seasonal

janitor. Plaintiff contends that these reasons are neither clear nor convincing because they are not

supported by substantial evidence. This Court disagrees. While the Court finds that three of the

reasons are neither clear nor convincing, the fourth reason—Plaintiff's ability to work as a

janitor after his alleged onset date—is supported by substantial evidence in the record. Because it

directly goes to Plaintiff's ability to work, this, alone, is a substantial enough to find Plaintiff's

testimony as to the disabling effects of his impairments not credible.

### a.  Lack of Evidence in the Record

Under certain circumstances, the ALJ can discount claimant testimony when that

testimony is not supported by the objective medical record. *See Batson,* 359 F.3d at 1196 (9th

Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective,

physical basis by claimant's treating physician.") *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's

testimony as to her back pain.). However, this may not be the ALJ's sole reason for discounting a

claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the

severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ states that, "[w]hile the claimant describes fairly limited activities of daily living, the record does not necessarily provide a medical justification for his reclusive lifestyle." Tr. 22. The only evidence the ALJ cites in support of this argument is a worker's compensation examination from July of 2008. *Id.* The report documents Plaintiff's "history of major depression with associated anxiety, substance dependency, PTSD, anti-social personality disorder, and lumber strain." *Id.* The ALJ characterizes the report as finding "claimant's symptoms were 'moderate' in nature and not permanent." *Id.*

Here, the ALJ's characterization of the arbiter's opinion is misleading. Rather than suggest that all of Plaintiff's mental health conditions are not permanent, the arbiter found only that Plaintiff's anxiety was not permanent. Tr. 1408. The arbiter goes on to state that whether his depression and PTSD are permanent cannot be judged because, at the time, Plaintiff was not seeking treatment. Tr. 1409. Since this report in 2008, there has been extensive documentation that Plaintiff's mental health conditions continue to be a problem. Tr. 784, 912, 990, 1385. Accordingly, this reason is neither clear nor convincing.

### b. Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn,* 495 F.3d at 639. However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and

"the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart,* 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ found that "the claimant's reported activities of daily living . . . further support the notion that the claimant's mental symptoms did not preclude *all* work-related activities." Tr. 22 (emphasis in original). In support of this finding, the ALJ points to Plaintiff's ability to tinker in his workshop, do yardwork, and grocery shop independently. *Id.* Yet none of these activities are inconsistent with Plaintiff's claim of total disability. Plaintiff testified he "doesn't do much" when he spends time in his shop. Tr. 51. He noted he grocery shops "if necessary." Tr. 52. In response to the ALJ's question as to whether he runs errands, goes for drives, or visits family and friends, he said "not very often, not as much as I should." *Id.* He then testified that his girlfriend, who works from home, "generally manage[s] the house." Tr. 51. In his disability report, he stated he was able to take out the trash, recycling, and do household repairs for an hour four to five times a week. Tr. 337. Plaintiff's limited daily activities do not detract from his testimony that he is unable to work. *See Webb*, 433 F.3d at 688. This is not a clear or convincing reason for discounting Plaintiff's testimony as to the limiting effects of his conditions.

### c. Failure to Follow a Prescribed Course of Treatment

Failure to follow a prescribed course of treatment, under certain circumstances, constitutes a clear and convincing reason for rejecting a claimant's subjective symptom

testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). This is particularly true in the context of subjective pain testimony, as the failure to seek treatment or follow treatment suggests the complaints are "unjustified or exaggerated." *Orn*, 495 F.3d at 638 (citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). "But in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, the approach to credibility makes little sense." *Id.* In *Orn*, the Ninth Circuit held that "the failure to follow treatment for obesity tells us little or nothing about the claimant's credibility." *Id.* There, the court also emphasized that a treating source must prescribe—"not simply recommend"—a treatment "that is clearly expected to restore the ability to engage in substantial gainful activity" before the Administration can find a claimant failed to follow a prescribed treatment. *Id.* at 636–37; SSR 02-1p ("Evaluating Obesity").

Here, the ALJ cites Plaintiff's lack of interest in remaining physically active and eating "wisely" in discrediting Plaintiff. Tr. 24. He also states that this encouragement of Plaintiff to engage in physical activity "suggests not only was the claimant physically capable of increased activity, but that such a course would improve his overall functioning." *Id.* In support of this argument, the ALJ cites one nursing pain assessment note in the medical record. Tr. 1373.

Under the law of this circuit, the ALJ's reasoning is neither clear nor convincing. As discussed in *Orn*, Plaintiff's alleged failure to follow prescribed treatment for his obesity "tells us little or nothing about [Plaintiff's] credibility" as, by Social Security's own regulation, "the goals of treatment for obesity are generally modest, and most treatment is ineffective." SSR 02-1p. Contrary to the ALJ's assertion, this treatment note in no way suggests that Plaintiff is capable of increased physical activity or that it would necessarily improve his functioning. Rather, the note states that they discussed the "importance of being physically active" and that he

should "increase physical activity *as able*." Tr. 1373 (emphasis added). At best this is a recommendation under SSR 02-1p ("A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment."). Further, this particular medical record was completed by Veronica O'Connor, LPN, as part of a nursing pain assessment. Tr. 1373. It was not prescribed treatment by a treating source. Plaintiff's decision not to discuss either his diet or physical activity, therefore, can hardly be characterized as a failure to follow prescribed treatment. On this point, too, the ALJ has erred.

### d. Work History

The ALJ may consider work that a claimant engaged in—regardless of whether that work amounts to substantial gainful activity—in making his disability determination. SSR 96-7 (prior work and efforts to work are factors used to evaluate a claimant's credibility); *see also* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). The ALJ is permitted to take into account income earned after an individual's alleged onset date. *Id*. ("The work . . . that you have done during any period in which you are disabled may show that you are able to work at the substantial gainful activity level."). As the Commissioner points out, holding one's self out as capable of work "does cast doubt on a claim of disability." *See Ghanim,* 763 F.3d at 1165.

Here, the ALJ found that Plaintiff's brief seasonal work as a janitor after his alleged onset date suggests that claimant's symptoms were moderate and not permanent in nature. Tr. 22. Plaintiff held this job for approximately one month in 2007. Tr. 298. The record reveals that this work was less than twenty hours per week. *Id.* And he testified that he did not apply to any other jobs during the period in question. *Id.* at 42.

Plaintiff consistently states in the record that he left this job because he was no longer needed. Tr. 41–42, 301, 1383. In other words, his alleged disability did not prevent him from continuing to work at this job. While the job did not rise to SGA-level work, it is inconsistent with Plaintiff's allegation that he is totally disabled because it suggests "that [Plaintiff is] able to do more work than [he] actually did." 20 C.F.R. §§ 404.1571, 416.971. Accordingly, the ALJ's inference is reasonable and this is a clear and convincing reason to discount Plaintiff's credibility as to his subjective symptom testimony.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this ____9____ day of November, 2017

MARCO A. HERNÁNDEZ
United States District Judge